UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

NEXTGEAR CAPITAL, INC.                    CIVIL ACTION NO.
                                                           1:14-cv-00203-WTL-DKL
VERSUS

SELECT CAR COMPANY, INC., JAMES
DONALD SANANGELO, CHARLES D.
ANTHONY, and CLARENE ALLEN
ANTHONY                                   JURY DEMANDED

**MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION,
IMPROPER VENUE OR, ALTERNATIVELY, FOR TRANSFER
OF ACTION PER 28 U.S.C. 1404[a]**

MAY IT PLEASE THE COURT:

Defendants SELECT CAR COMPANY, INC., JAMES DONALD SANANGELO, CHARLES D. ANTHONY, and CLARENE ALLEN ANTHONY, respectfully move this Honorable Court to dismiss this Action for lack of personal jurisdiction or for improper venue, or, alternatively, to transfer this Action to the Western District of Louisiana, Shreveport Division, and further support their motion, as follows:

Plaintiff NEXTGEAR CAPITAL, INC. is the successor by merger of two prior entities operating as Manheim Automotive Financial Services, Inc., and Dealer Services Corporation. NEXTGEAR CAPITAL, INC., contracted with defendant SELECT CAR COMPANY, INC., ["Select"] to provide certain used automobile floor plan finance and Select's principals, JAMES DONALD SANANGELO, CHARLES D. ANTHONY, and CLARENE ALLEN ANTHONY, [collectively "guarantors"] signed individual guarantees to Select's contract. Defendant Select is a very small used car lot in Shreveport, Louisiana. Select's principals have been in the used car

business for years. Defendants conduct no business in Indiana and there is no basis whatsoever for haling defendants into court in Indiana. Plaintiff is a large national finance operation focused on small used car dealers.

Select's contract and the guarantees provided that suit must be brought in Marion or Harrison County, Indiana. Par. 21, Select's contract; pp.4 of 5, par. [d], of guarantee contracts. There is a purported consent to jurisdiction and venue provision. Id. Plaintiff even placed a clause in the contracts that purports to have Select and the guarantors waive any objection to jurisdiction, venue or forum non conveniens. Id. Plaintiff then reserved unto itself the right to sue defendants in any competent court. Id. Thereafter, plaintiff added an arbitration clause binding defendants to arbitrate disputes. Id. The contract provides for interpretation under Indiana law. Id.

The contract does not provide that the Action or disputes may only be litigated or resolved in Indiana state or federal courts or only in an Indiana arbitral forum. Indeed, the contract's jurisdiction and venue provisions seem conflicting and confusing to some degree.

Forum selection and other clauses are designed to try and oust jurisdiction, embedded in contracts, involve the intersection of two strands of traditional contract law that qualify the general rule that courts will enforce the terms of a contract as written. Pursuant to the first strand, courts traditionally have reviewed with heightened scrutiny the terms of contracts of adhesion, which are defined by law as form contracts offered on a take-or-leave basis by a party with stronger bargaining power to a party with weaker power. Some commentators have questioned whether contracts of adhesion can justifiably be enforced at all under traditional contract theory because the adhering party generally enters into them without manifesting knowing and voluntary consent to all their terms. See, e. g., Rakeoff, <u>Contracts of Adhesion: An Essay in Reconstruction</u>, 96 Harv.L.Rev. 1173,

1179-1180 [1983]; Lawson, Mass Contracts: Lawful Fraud in California, 48 S.Cal.L.Rev. 1, 1213 [1974].

Forum selection clauses, like arbitration clauses, personal jurisdiction waivers, and jury trial waivers, are among the most onerous and overreaching of all clauses that may appear in contracts.[1] The impact of these clauses is substantial and can effectively extinguish legitimate claims and prevent assertion of defenses, since the costs of retaining an attorney to handle the remote litigation or arbitration, coupled with purported limitations imposed substantively and procedurally, would far exceed the party's financial limitations and recoverable damages in counter-suit. **Scarcella v. America Online**, 4 Misc.3d 1024[A], Slip Opinion, 2004 WestLaw 2093429 [N.Y. Civ.Ct. 2004]

---

[1] In **Mark Group Intern., Inc. v. Still**, 151 N.C.App. 565, 566 S.E.2d 160 [N.C. App. 2002], the court stated: "In general, there are three kinds of provisions used by contracting parties to avoid litigation concerning jurisdiction and governing laws: 1] a choice of law provision, which names a particular state and provides that the substantive laws of that jurisdiction will be used to determine the validity and construction of the contract, regardless of any conflicts between the laws of the named state and the state in which the case is litigated; 2] a consent to jurisdiction provision, which concerns the submission of a party or parties to a named court or state for the exercise of personal jurisdiction over the party or parties consenting thereto. By consenting to the jurisdiction of a particular court or state, the contracting party authorizes that court or state to act against him; and 3] a forum selection provision, *which goes one step further* than a consent to jurisdiction provision by designating a particular state or court as the jurisdiction in which the parties will litigate disputes arising out of the contract and their contractual relationship. See **Johnston County v. R.N. Rouse & Co., Inc.**, 331 N.C. 88, 92-93, 414 S.E.2d at 30, 33 [1992]; **Corbin Russwin, Inc. v. Alexander's Hardware, Inc.**, 147 N.C.App. 722, 726-27, 556 S.E.2d 592, 596 [2001] ["To summarize, a forum selection clause designates the venue, a consent to jurisdiction clause waives personal jurisdiction and venue, and a choice of law clause designates the law to be applied."]." The court went on to state that: "A typical forum-selection clause might read: "[B]oth parties agree that only the New York Courts shall have jurisdiction over this contract and any controversies arising out of this contract." ... A ... "consent to jurisdiction" clause[ ] merely specifies a court empowered to hear the litigation, in effect waiving any objection to personal jurisdiction or venue. Such a clause might provide: "[T]he parties submit to the jurisdiction of the courts of New York." Such a clause is "permissive" since it allows the parties to air any dispute in that court, without requiring them to do so."

[citing **Oxman v. Amoroso**, 172 Misc.2d 773, 659 N.Y.S.2d 963, 967 [Yonkers City Ct.1997].]. The **Scarcella** court questioned whether forum selection clauses should ever be allowed in certain contracts where the parties lack arms-length power.  A court's focus must be whether such an imbalance in size resulted in an inequality of bargaining power that was unfairly exploited by the more powerful party.  **Hodes v. S.N.C. Achille Lauro ed Altri-Gestione**, 858 F.2d 905 [3d Cir.1988], cert. denied, 490 U.S. 1001, 109 S.Ct. 1633, 104 L.Ed.2d 149 [1989].

In 1991, the U.S. Supreme Court declared in **Carnival Cruise Lines, Inc. v. Shute**, 499 U.S. 585, 595, 111 S.Ct. 1522, 1528, 113 L.Ed.2d 622 [1991], that "forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness."  To be enforceable such clauses must be *noticeable*[2] *and reasonable*.[3]  The subject personal jurisdiction waivers/forum selection clause is in small print and confusing.[4]  It is also unreasonable since it allows plaintiff to solicit and sell its financing services in one state while at the same time chilling and extinguishing meritorious claims by forcing injured small business consumers[5] to bring or

---

[2]     **Klinghoffer v. Achille Lauro**, 1988 A.M.C. 636, 638 [U.S.D.C. S.D. N.Y. 1987] ["... the ticket does not give fair warning to the American citizen passenger that he or she is renouncing and waiving his or her opportunity to sue in a domestic forum over a contract made and delivered in the United States..."].

[3]     **Berman v. Cunard Line, Ltd.**, 771 F.Supp. 1175 [U.S.D.C. S.D. Fla. 1991] [forum selection clause transferring case from Florida to New York found to be unfair on grounds of fraud and overreaching].

[4]     **Lerner v. Karageorgis Lines, Inc.**, 66 N.Y.2d 479, 497 N.Y.S.2d 894, 488 N.E.2d 824 [1985] [consumer contracts entered into in New York State must be in 10 point type to be enforceable unless the transaction is governed by maritime law which permits 4 point type].

[5]     Defendants would be business consumers under the statute at issue.  **Cheramie Services, Inc. v. Shell Deepwater Production, Inc.**, 35 So.3d 1053 [La. 2010].

...

defend suits in a distant and economically inaccessible forum.[6]

Indeed, **Carnival Cruise Lines, Inc. v. Shute**, supra, was one of the most controversial consumer law opinions in the history of the High Court but plainly showed that bad facts made bad law. The Shutes presented bad facts. For the first time, in dicta, the court created a loophole for inclusion of such onerous clauses in consumer contracts. Since that time, large banks, credit card companies, and the like have made efforts to squirrel away such clauses in consumer contracts.

In **Carnival Cruise Lines**, supra, the High Court considered claims by a couple who had purchased cruise line tickets which contained a prominent notice proclaiming that all suits, claims and disputes of any kind shall be brought in Florida courts and no where else.[7] In holding the clause to be valid, the Court noted numerous facts to find that the clause was a "freely negotiated forum-

---

[6] Walter W. Heiser, Forum Selection Clauses in State Courts, 45 Fla.L.Rev. 361, 388 [1993] [stating that the presumption that parties unknowingly waived their due process rights "...makes little sense in commercial contracts between parties of relatively equal bargaining power, but it has some force in typical consumer contracts..."]; Lee Goldman, My Way and the Highway: The Law and Economics of Choice of Forum Clauses in Consumer Form Contracts, 86 Nw.U.L.Rev. 700, 730 [1992] ["In sum, economic, political, and social interests favor non-enforcement of forum selection clauses in consumer contracts."]; John McKinley Kirby, Consumer's Right to Sue at Home Jeopardized Through Forum Selection Clause in Carnival Cruise Lines v. Shute, 70 N.C.L.Rev. 888 [1992]; **Henry Heide, Inc. v. WRH Prods. Co., Inc.**, 766 F.2d 105, 109 [3rd Cir. 1985] [observing that whereas consumers and manufacturers have unequal resources and bargaining positions, commercial parties have equal bargaining power]; **U.S. Fibres, Inc. v. Proctor & Schwartz, Inc.**, 509 F.2d 1043, 1048 [6th Cir. 1975] ["Unconscionability rarely exists in a commercial setting involving parties of equal bargaining power..."]; **Employers Ins. of Wausau v. Suwannee River Spa Lines, Inc.**, 866 F.2d 752, 762 [5th Cir. 1989] ["...contract law provides adequate remedies in a commercial setting where the parties are generally of equal bargaining power..."].

[7] "It is agreed by and between the passenger and the Carrier that all disputes and matters whatsoever arising under, in connection with or incident to this Contract shall be litigated, if at all, in and before a Court located in the State of Florida, U.S.A. to the exclusion of the Courts of any other state or country." **www.caselaw.lp.findlaw.com/scripts/ getcase.pl?court=us&vol=499&invol=585**.

selection clause." The Court found the forum selection clause to be "reasonable," under the facts in that case. The cruise line was based in Florida but, in this instance, had sailed from California to Mexico and, while in route, plaintiff was injured. The cruise line selected Florida as the court system to be used in the forum selection clause. Plaintiffs filed suit in the State of Washington, which was their home forum based on minimum contacts of the cruise line with the State of Washington and specific jurisdiction held. The Court found evidence that allowing the forum selection limitation actually reduced customer ticket prices by "sparing litigants' time and expense and conserving judicial resources" thereby reducing fares reflecting the savings that the cruise line enjoys.

In **Carbon Black Export, Inc. v. The Monrosa**, 254 F.2d 297 [5th Cir. 1958], cert. dismissed, 359 U.S. 180 [1959], the Fifth Circuit Court of Appeals held that an onerous forum selection clause, akin to plaintiff's clause, was unenforceable. The Court reiterated the traditional view of most American courts that "agreements in advance of controversy whose object is to oust the jurisdiction of the courts are contrary to public policy, and will not be enforced." Id. at 300-301. Thereafter the Supreme Court, in **M/S Brenman v. Zapata Off–Shore Co.**, 407 U.S. 1, 92 S.Ct. 1907 [1972], held that forum selection clauses are "prima facie valid" but cannot be enforced where the clause would be "unreasonable under the circumstances," or where the clause is "invalid for such reasons as fraud or overreaching." Id. at 1913,1916. Here, the plaintiff's clause leads to a very unreasonable result if enforced as written. Further, as shown, the contractual provision and conduct of plaintiff involved overreaching and fraud.

It is important to note that in even earlier jurisprudence the Supreme Court in **The Kensington**, 183 U.S. 263, 269 [1902], refused to enforce a clause requiring that all disputes under a contract for passage be governed by Belgian law because such law would have favored the

shipowner in violation of United States public policy. In this instance, all of the events leading up to the filing of the Action by plaintiff, all occurred in Louisiana, not Indiana.

In **Reynolds v. Paulson**, 871 So.2d 1215 [La. App. 4 Cir. 2004], the court of appeal noted that "...commercially sophisticated parties are free to limit their disputes to any forum of their choosing." There was no showing, in **Reynolds**, that the parties were not on equal footing. The parties who conferred and approved the terms of the agreements were sophisticated negotiators.

Louisiana law should be used to decide if the jurisdiction waiver/forum selection clause is viable and whether it confers venue because conflicts of laws requires so and state long-arm standards govern personal jurisdiction in federal courts. **General Engineering Corp. v. Martin Marietta Alumina, Inc.**, 783 F.2d 352, 356 [3rd Cir. 1986]. However in reviewing defendants' 1404[a] motion, federal standards apply as to that motion alone. **Stewart Org., Inc. v. Ricoh Corp.**, 487 U.S. 22, 28, 108 S.Ct. 2239, 2243 [1988]. Even if the personal jurisdiction waivers/forum selection clause[s] is [are] found viable and enforceable, this Honorable Court may transfer venue under 1404[a]. **Northwestern Nat. Ins. Co. v. Donovan**, 916 F.2d 372, 378 [7th Cir. 1990].

Neither defendants or their employees, members and agents have traveled to the State of Indiana and do not conduct any activities there. Defendants do not engage in any activities such as to provide any colorable basis for general personal jurisdiction over them in Indiana. **Reynolds and Reynolds Holdings, Inc. v. Data Supplies, Inc.**, 301 F.Supp.2d 545 [U.S.D.C. E.D. Va. 2004]; **Cole v. American Family Mut. Ins. Co.**, 333 F.Supp.2d 1038 [U.S.D.C. Kan. 2004]. The subject contract was entered into in Louisiana, not Indiana.[8] All contacts and discussions took place in

---

[8] "'The mere existence of a contract between the non-resident defendant and the resident plaintiff does not, by itself, establish personal jurisdiction....'" **AMP**, 823 F.Supp., at 264.

Louisiana, not Indiana. All services or other matters related to the contract were delivered, made and transacted in Louisiana, not Indiana. The physical evidence is located in Louisiana, as well as the witnesses. The collateral is located in Louisiana, not Indiana.

Louisiana law is clear in that any objection to venue cannot be waived, contractually or otherwise, prior to the institution of the action. La. C.C.P. Art. 44; **Fidelak v. Holmes European Motors, L.L.C.**, --- So.3d ----, 2013 WL 6439231, 2013-0691 [La. 12/10/13]; **Thompson Tree & Spraying Service, Inc. v. White-Spunner Const., Inc.**, 68 So.3d 1142 [La. App. 3 Cir. 2011].[9] Nonetheless, Plaintiff presumably will argue that the contracts, entered into in Louisiana in violation of Article 44, still contained clauses, albeit buried in the fine print which was not pointed out to defendants, which purported to make the contracts subject to interpretation under Indiana law and suggested that Select and the guarantors consented to the personal jurisdiction and venue of the courts of Indiana. The subject clause is buried in the small print in the contract, is adhesionary and

---

Courts generally consider and balance four factors, as identified in **Strick Corp. v. A.J.F. Warehouse Distributors, Inc.**, 532 F.Supp. 951 [U.S.D.C. E.D. Pa.1982], when evaluating contacts where a non-resident is involved in a contract with an in-state resident: [1] the character of the pre-contract negotiations; [2] the location of those negotiations; [3] the terms of the sales agreement; and [4] the type of goods sold. Id. at 958. With respect to the character of the negotiations, "[t]he **Strick** court envisioned this factor as looking to whether the defendant ''initiated the deal, attempted to alter the terms of the contract, or conducted significant negotiations with plaintiff." **Allied Leather Corp. v. Altama Delta Corp.**, 785 F.Supp. 494, 500 [U.S.D.C. M.D. Pa.1992]." **Superior Precast, Inc. v. Proto Const. and Development Corp.**, Not Reported in F.Supp.2d, 1999 WestLaw 455594, [U.S.D.C. E.D. Pa.1999]; **Cole v. McGuire Bros. Construction, Inc.**, 2005 WestLaw 3077902 [U.S.D.C. N.J. 2005].

[9]   In **Davis v. Humble Oil & Refining Company**, 283 So.2d 783, 794 [La. App. 1st Cir.1973] [on rehearing], the court held that "Where parties stipulate the State law governing the contract, Louisiana conflict of laws principles require that the stipulation be given effect, **unless there is statutory or jurisprudential law to the contrary or strong public policy considerations justifying the refusal to honor the contract as written**. [emphasis added.]." **American Standard Leasing Co. v. Plant Specialties, Inc.**, 427 So.2d 555 [La. App. 3 Cir. 1983].

illegal under Louisiana law, per La. R.S. 51:1407.[10]  There can be no doubt that the purpose behind a forum selection clause is to oust the court system and divest it of jurisdiction.[11]  Louisiana law would apply to the plaintiff's conduct and actions in discussing and entering the contract.  All of those events took place in Louisiana, not Indiana.  The validity and legality of the contract must be determined under Louisiana law.  Plaintiff is not free to enter into illegal contracts in Louisiana then declare, unilaterally, enforcement of its illegal and adhesionary clauses.

The statutes at issue, being the highest source of Louisiana law as discussed in **Thompson Tree**, supra, make it very clear that it is against the public policy of Louisiana to allow contractual clauses to alter jurisdiction or venue in advance of the filing of a suit, contrary to the provisions of the Louisiana Code of Civil Procedure and no provision of any contract purporting to waive or select jurisdiction or venue in advance of the filing of any civil action may be enforced.  The Legislature specifically referred to: "R.S. 51:1405," "any plaintiff," "filing of any civil action," "any contract," and "[I]t being against the public policy of the state of Louisiana to allow a contractual selection of.....jurisdiction contrary to the provisions of the Louisiana Code of Civil Procedure."

---

[10] **Tulane Indus. Laundry, Inc. v. Quality Lube & Oil, Inc.**, 779 So.2d 99, 00-0610 [La. App. 4 Cir. 2001] [The Fourth Circuit held that the forum selection clause was enforceable.  It cited La. R.S. 51:1407, The Unfair Trade Practices and Consumer Protection Law, noting that the statute prohibits, as against public policy, the parties to a contract from agreeing that a particular court would have jurisdiction to decide a contractual dispute when no minimum contacts existed in relation to the chosen court. The court found that the enforcement of the clause in that case would have been unreasonable.].  The court in **Rogers, Lynch and Assoc., LLP v. Risk Factors Solutions Ltd.**, 2004 WestLaw 385064 [U.S.D.C. E.D. La. 2004], found that fundamental fairness in enforcing a forum selection clause was founded upon defendant's "*minimum contacts to warrant jurisdiction*." Id. at p.6.

[11] Of course, "...the presence of an forum selection clause or arbitration clause in a contract does not divest the district court of jurisdiction to determine the underlying contract's validity and legality..." **Farmers Cotton Co., Inc. v. Savage**, 714 So.2d 926, 30,289 [La. App. 2 Cir. 1998].

As stated, the subject personal jurisdiction waivers/forum selection clause were never pointed out to defendants and they had no knowledge or reason to understand that the contracts would purportedly require them to appear in litigation across the United States from their home and place of business. Forcing defendants to litigate in Indiana is an unreasonable and unjust result. The limited dealings between the parties have absolutely no connection with Indiana and defendants had no reasonable expectation of being forced to litigate in Indiana. Neither specific or general personal jurisdiction exist over either of the defendants in Indiana. Fundamental fairness cannot be found through enforcement of plaintiff's fine print.

Personal jurisdiction waivers/forum selection clauses are unreasonable: [1] if their incorporation into the agreement was the result of fraud or overreaching; [2] if the complaining party will for all practical purposes be deprived of his or her day in court, due to the grave inconvenience or unfairness of the selected forum; [3] if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or [4] if the clauses contravene a strong public policy of the forum state. **Roby v. Corporation of Lloyd's**, 996 F.2d 1353, 1363 [2d Cir. 1993]; **Pitts, Inc. v. Ark-La Resources, L.P.**, 717 So.2d 268, 269 [La. App. 2 Cir. 1998]; **M/S Bremen v. Zapata Off-Shore Co.**, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 [1972]. The Supreme Court defined the fundamental fairness test to involve examination of: [1] whether one party set the forum as a bad faith tactic to discourage pursuit of legitimate claims; [2] whether consent was obtained through fraud or overreaching; or [3] whether the contesting party was given notice of the forum provision. **Carnival Cruise Lines, Inc. v. Shutes**, 499 U.S. 585, 594-595, 111 S.Ct. 1522, 1528. Some courts have adopted the following tests to determine whether a foisted, adhesionary clause is reasonable in terms of fundamental fairness: [1] whether the clause was obtained by fraud, duress, abuse of economic

power, or unconscionable means; [2] whether the designated forum would be closed to the claims or would not effectively handle the claims; or [3] whether the designated forum would be so seriously inconvenient that to require the plaintiff to bring claims there would effectively deprive him of his day in court. **Long v. Dart Intern., Inc.**, 173 F.Supp.2d 774 [U.S.D.C. W.D. Tenn. 2001].

"A forum selection clause is 'unreasonable' where the defendant can make a 'strong showing' either that the forum thus selected is 'so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court,' or that the clause was procured through 'fraud or overreaching.'" **Foster v. Chesapeake Ins. Co.**, 933 F.2d 1207, 1219 [3d Cir.1991]. The Supreme Court announced an important exception to the prima facie validity of forum selection clauses. Such clauses will not be enforced if doing so would violate "a strong public policy of the forum, whether declared by statute or judicial decision." **M/S Bremen v. Zapata Off-Shore Co.**, 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 [1972]. Clearly, Louisiana has a strong public policy against such clauses. Supra.

While defendants cannot show "fraud" in the formation of the agreement, it is clear that the buried clause was the result of overreaching[12] and an imbalance in the power of the parties in contracting. **Finkelschtein v. Carnival Cruise Lines**, 2006 WestLaw 1492469 [N.J. Super. A.D. 2006]; **M/S Bremen**, supra, at 12. If any factor is missing, the court may refuse to enforce it. **Jayson**

---

[12] Overreaching involves acts less than intentional, fraudulent or even grossly negligent. High pressure sales tactics, forced contractual terms, unequal bargaining strength and the like amount to overreaching. **Gregory v. Louisiana Bd. of Chiropractic Examiners**, 608 So.2d 987, 61 U.S.L.W. 2355 [La. 1992]; **Moore v. Illinois**, 434 U.S. 220 [1977]; Black's Law Dictionary, p.1129 [7th ed. 1997 [defining "overreaching" as taking unfair commercial advantage of another.].

**Co. v. Vertical Market Software**, 2006 WestLaw 1374039 [U.S.D.C. N.J. 2006]. Further, the dispute must fit squarely within the scope of the clause. **Cottman Transmission Systems v. Martino**, 36 F.3d 291, 293 [3d Cir. 1994].

Defendants had no power to alter or change any of the terms of the agreement. Defendants will, for all practical purposes, be deprived of their day in court and will be driven out of business if it is forced to litigate in Indiana. Litigating in Indiana is a grave inconvenience for defendants. Litigating in a forum so distant and completely unconnected to the events giving rise to the suit is unfair. Fundamental fairness of the plaintiff's chosen forum will deprive the defendants of their ability to defend themselves. Further, the personal jurisdiction waivers/forum selection clauses clearly contravene a strong public policy of Louisiana.

The contract executed with plaintiff, in this case, was a standardized, pre-printed and typed contract used by plaintiff all of the time and across the country. Indeed it is almost the same, exact language used by the predecessor entities Manheim and Dealer Services Corp, referenced in par. 1, supra. There was no opportunity to make changes to the form contracts. Defendants had no bargaining power. The selection of a forum in advance reduces the plaintiff's exposure to suits in forums all over the United States, although plaintiff enjoys the benefit of doing business across America and selecting one of several powerful means to attack its own customers. Despite the inherent unfairness of the clause, the primary reason not to enforce it is that Louisiana law forbade it.

The strong public policy of Louisiana [lex loci contractus] forbids such personal jurisdiction waivers/forum selection clauses. Further, the plaintiff's clause is unjust, unreasonable and adhesionary. The clause effectively makes the litigation so expensive and inconvenient as to deprive

defendants of their day in court.

In **Aguillard v. Auction Management Corp.**, 884 So.2d 1257 [La. App. 3 Cir. 2004], reversed, **Aguillard v. Auction Management Corp.**, 908 So.2d 1, 2004-2804 [La. 2005], the court of appeal held that auction terms and conditions contained in a consumer contract [purchase of a home at an auction], including the contract's arbitration clause, were adhesionary and lacked mutuality and, thus, was unenforceable against the bidder. The Supreme Court of Louisiana reversed based on the facts of the case but emphasized that a "contract of adhesion" is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party.  Further, the High Court stated that the real issue in a contract of adhesion analysis is not the standard form of the contract, but whether a party truly consented to all the printed terms; thus, the issue is one of consent.  Thus, consent to allegedly adhesionary contract is called into question by the standard form, small print, and most especially the disadvantageous position of the accepting party, which is further emphasized by the potentially unequal bargaining positions of the parties. Id.  An unequal bargaining position is evident when allegedly adhesionary contract unduly burdens one party in comparison to the burdens imposed upon the drafting party and the advantages allowed to that party. Id.  Therefore, once consent is called into question, the party seeking to invalidate contract as adhesionary must then demonstrate that the non-drafting party either did not consent to the terms in dispute or his consent was vitiated by error, which in turn, renders the contract or provision unenforceable. Id.  The facts of **Aguillard** are very different from the facts in this case however the law is right on point.  The **Aguillard** case involved a mutually restrictive set of contract terms and lacked real earmarks of overreaching.

Here, plaintiff's contract is in very small font size. See DKT #1-2.  It appears to be about size

5 or 6. In WordPerfect 10, the smallest possible font size offered is 6. In the decision in **Simpson v. Grimes**, 849 So.2d 740 [La. App. 3 Cir. 2003], w.d., 861 So.2d 567 [La. 2003], plaintiffs sued their broker and brokerage firm for mismanagement of an IRA account. The standard form contract signed by plaintiffs contained an arbitration clause printed in seven-point type. The court found that the contract containing the arbitration provision was adhesionary because the client had no choice in negotiating the provisions of the contract prior to acceptance and to require the client to arbitrate disputes was unduly burdensome. Moreover, the court found that the company was not bound by the arbitration provision and therefore the contract lacked mutuality. The court noted: "[B]oth federal and state law recognize a presumption in favor of arbitration, and against finding a waiver or default, [and] has been recognized in Louisiana jurisprudence and legislation. However, despite that presumption that arbitration agreements are not blindly validated where there is evidence that they contain material faults which render them unconscionable and unduly burdensome to one party. Id. at 747.

The plaintiff's personal jurisdiction waivers/forum selection clause were carefully placed near the end of the contract language, which is not emphasized.[13] Defendants did not have their

---

[13] In **Bailey v. Tucker Equipment Sales, Inc.**, 236 Ga.App. 289, 510 S.E.2d 904 [Ga. App. 1999], the court held that: "A lessor may exculpate his liability with a disclaimer clause provided such limitations are expressed in clear and unambiguous language. [citations omitted]. However, in order for exclusions of the implied warranties of fitness and merchantability to be effective, such exclusions must be written and conspicuous. **White v. First Fed. & C.**, 158 Ga.App. 373[1], 280 S.E.2d 398 [1981]. **White**, supra, specifically held that to be effective "as is" language must be conspicuous, reasoning that "[t]o hold that the 'as is' language need not be conspicuous would allow the implied warranties of fitness and merchantability to be annulled by implication by language less conspicuous than if they were directly eliminated.... [Cit.]" Id. at 373-374, 280 S.E.2d 398. Although **White** involved the interpretation of a sales contract, we see no reason for a different result in interpreting the lease at issue here. Without question, Paragraph 5 appears in the same size font as the rest of the printed terms in paragraphs 1-16, and although separately numbered is not otherwise set apart from the

attention drawn to the personal jurisdiction waivers/forum selection language during the paper-shuffling which took place at their offices during business hours when defendants' principals had customers to attend to. In fact, no one even pointed out the clauses at all. Defendants' principals were not required to sign or initial to acknowledge the personal jurisdiction waivers/forum selection language. Plaintiff did not want the clause emphasized since no person, in his or her right mind, would elect to waive personal jurisdiction to a state across the country from their home state in order to litigate any dispute. *Why would anyone agree to such a result unless there is a tremendous imbalance in bargaining strength and/or lack of notice [and consent] to such a clause?* **Williams v. Illinois State Scholarship Comm.**, 563 N.E.2d 465 [Ill. 1990] [forum selection clauses are leading to "ridiculous instances of long distance forum abuse."].

By analogy in Louisiana, general "As-Is" language does not waive the warranty against redhibitory defects. LSA-C.C. art. 2548; **Tarifa v. Riess**, 856 So.2d 21 [La. App. 4 Cir. 2003]; **Ross**

---

other 15 paragraphs. The "as is" phrasing within that paragraph is not in larger or contrasting type or color. See **Leland Indus. v. Suntek Indus.**, 184 Ga.App. 635, 637[1], 362 S.E.2d 441 [1987] [where "warranty" appears in all capital letters but disclaimer in lower case letters, disclaimer not effective]. Moreover, the paragraph makes no mention of any exclusion, disclaimer, or limitation on remedies or warranties. Compare **Harris v. Sulcus Computer Corp.**, 175 Ga.App. 140, 141[3], 332 S.E.2d 660 [1985] [exclusion or modification of implied warranty of merchantability in sales agreement pursuant to OCGA §§11-2-316[2] must mention merchantability and must be conspicuous]. Having reviewed the contract, we cannot agree that the language was "conspicuous" within the meaning of OCGA §§11-1-201[10]. **Leland Indus.**, 184 Ga.App., at 637[1], 362 S.E.2d 441. Nor do we find that a reasonable person ought to have noticed and understood that by the mere mention of "as is" in the context it appeared, without any mention of any warranties or any disclaimers of warranties, that he was agreeing to forego any rights to lease a piece of equipment in fit and suitable working condition. See **White**, 158 Ga.App., at 373-374[1], 280 S.E.2d 398; **Chrysler Corp. v. Wilson Plumbing Co.**, 132 Ga.App. 435, 437[1], 208 S.E.2d 321 [1974]. The trial court erred in finding that the phrase precluded recovery for any implied warranties. Compare **Webster v. Sensormatic Electronic Corp.**, 193 Ga.App. 654, 655, 389 S.E.2d 15 [1989]; **Rigdon v. Walker Sales & c.**, 161 Ga.App. 459, 461[1][d], 288 S.E.2d 711 [1982]. [emphasis added.]"

**v. Premier Imports**, 704 So.2d 17 [La. App. 1 Cir. 1997]; **Sanders v. Sanders Tractor Company, Inc.**, 480 So.2d, at 916.  Also, by analogy, a seller can limit implied warranties against redhibitory defects by declaring to the buyer defects at time of sale, or the seller can otherwise limit his obligations as seller, providing he does so clearly and unambiguously.[14]  In this instance, plaintiff placed the tiny language in the contracts so as to further conceal the language.[15]

The personal jurisdiction waivers/forum selection clause and its contents were not explained to defendants' principals.  In **Sportsman Store of Lake Charles, Inc. v. Sonitrol**, 725 So.2d 74 [La. App. 3 Cir. 1998], the court of appeal held that a waiver of warranty that security system sold was free of hidden defects or redhibitory vices was invalid, where there was no evidence that limitations of liability provided in contract were explained to the purchaser.  Valid waiver of the statutory warranty that the thing sold is free of hidden defects or redhibitory vices must be written in clear and unambiguous terms, must be contained in the sales document, and must be brought to the attention of the buyer and explained to him. Id.; **Thibodeaux v. Meaux's Auto Sales, Inc.**, 364 So.2d 1370

---

[14] **Hob's Refrigeration and Air Conditioning, Inc. v. Poche**, 304 So.2d 326, 327 [La. 1974]; **Rey v. Cuccia**, 298 So.2d 840, 842 [La. 1974]; **Landaiche v. Supreme Chevrolet, Inc.**, 602 So.2d 1127, 1131 [La. App. 1 Cir.1992]; **Guidry v. St. John Auto Exchange**, 379 So.2d 878 [La. App. 4 Cir.1980]; **Hendricks v. Horseless Carriage, Inc.**, 332 So.2d 892 [La. App. 2 Cir.1976]; **Sanders v. Sanders Tractor Company, Inc.**, 480 So.2d 913 [La. App. 2 Cir.1985]. Louisiana Civil Code Article 2548 states: "The parties may agree to an exclusion or limitation of the warranty against redhibitory defects. The terms of the exclusion or limitation must be clear and unambiguous and must be brought to the attention of the buyer...."

[15] This is not the instance for a court to handle small type and font sizes.  Where a proprietor of a theater did not show that the theater ticket purchaser was aware of limitations printed in very small type on the ticket, stating that management reserved right to refuse admission on the ticket by refunding the purchase price, the limitation did not foreclose the purchaser's right to recover damages for breach of contract, including damages for humiliation and embarrassment where he was ejected from theater on sole ground of physical infirmity. **Vogel v. Saenger Theatres**, 22 So.2d 189 [La. 1945].

[La. App. 3 Cir. 1978]; **Dixie Roofing v. Allen Parish Sch. Bd.**, 690 So.2d 49 [La. App. 3 Cir. 1996]; **Prince v. Paretti Pontiac Company, Inc.**, 281 So.2d 112, 117 [La. 1973]; **Keaty v. Moss Motors, Inc.**, 638 So.2d 684, 687 [La. App. 3 Cir. 1994], w.d., 644 So.2d 399 [La. 1994]; **Ross v. Premier Imports**, 704 So.2d 17, 21 [La. App. 1 Cir. 1997], w.d., 709 So.2d 750 [La. 1998]. The court of appeal went on to state that "[T]his court finds it unlikely that any buyer would agree to sign this contract had the provisions been fully disclosed. With this contract Sonitrol attempts to memorialize their product as something not fit for any purpose and thus relieve itself from liability for its want of care. One wonders why any buyer would agree to purchase such a system and pay monthly fees, knowing that it is not warranted to be fit for the purpose intended. Such broad overreaching language which is clearly used to take advantage of unsophisticated purchasers is not favored by this court and will be condoned, if at all, only when it is shown that all requisites are clearly met. A purchase made "as is/where is" may be appropriate at a flea market or garage sale, however, in the marketing of security systems, it is at least circumspect."

The Sixth Circuit Court of Appeals in **Floss v. Ryan's Family Steak Houses, Inc.**, 211 F.3d 306 [6th Cir.2000], cert. denied, 531 U.S. 1072, 121 S.Ct. 763, 148 L.Ed.2d 664 [2001], found a comparable agreement unenforceable. Finding a lack of consideration in the formation of the agreement, the court in **Floss** stated: "EDSI's promise to provide an arbitral forum is fatally indefinite. Though obligated to provide some type of arbitral forum, EDSI has unfettered discretion in choosing the nature of that forum. Specifically, EDSI has reserved the right to alter the applicable rules and procedures without any obligation to notify, much less receive consent from, Floss and Daniels." The **Floss** court concluded that EDSI's promise was illusory and, thus, lacked mutuality of obligation or consideration, rendering the agreement unenforceable.

Venue is improper in this Honorable Court. Pursuant to 28 U.S.C. 1391, venue is improper as defendants do not reside in Indiana or this District. Further, no events, transactions or omissions giving rise to the claims therein in Indiana or this District. Further still, there is no property situated in Indiana or this District which is the subject of this Lawsuit. Defendants are not subject to personal jurisdiction in Indiana and defendant has no "minimum contacts" with Indiana.

Alternatively and only in the event this Honorable Court finds personal jurisdiction over defendants and finds proper venue, then defendants move this Honorable Court to transfer this cause to the Western District of Louisiana, Shreveport Division, a District with proper venue, where defendants are each located and reside, where the subject vehicles are located, where the contract discussions and signing occurred, where payments were made, where all witnesses are located and where all events transactions and omission occurred. 28 U.S.C. 1404[a]; **Van Dusen v. Barrack**, 376 U.S. 612, 84 S.Ct. 805, 8 Fed.R.Serv.2d 17b.11, 1, 11 L.Ed.2d 945, [U.S. 1964] [Pa.].[16]

---

[16] "Generally, the plaintiff's choice of forum is accorded great weight; however, none of the relevant conduct occurred in this district, and the plaintiff is actually a resident of the Middle District of Pennsylvania. Under these circumstances, plaintiff's choice of forum is given less deference. **Wolfson v. Diamond Crystal Salt Co.**, No. 88-4103, 1989 U.S. Dist. LEXIS 1079 [E.D. Pa. February 8, 1989]; **Rowles v. Hammermill Paper Co.**, 689 F.Supp. 494, 495-496 [E.D. Pa.1988]. Plaintiff's choice of forum is accorded little weight, and the other relevant factors point in favor of transfer. The factors that must be considered are: [1] relative ease of access to sources of proof; [2] availability of compulsory process for attendance of unwilling witnesses; [3] cost of attendance at trial by willing witnesses; [4] the possibility of view of the premises, if appropriate; [5] all other practical problems that make trial of a case easy, expeditious, and inexpensive; and [6] "public interest" factors, including the relative congestion of court dockets, and the advantage of having local issues of law and fact determined by local courts and juries. **Rowles**, 689 F.Supp. at 495." **Mullen v. New Jersey Steel Corp.**, Not Reported in F.Supp., 1989 WestLaw 20193 [U.S.D.C. E.D. Pa. 1989]. Also see: **Euro-Classics, Inc. v. Excel Global Logistics, Inc.**, 2006 WestLaw 1344098 [U.S.D.C. N.J. 2006]; **Ware v. CEBA-GEIGY Corp.**, 2005 WestLaw 1563245 [N.J. Super. 2005]; **Ross v. Consolidated Rail Corp.**, Not Reported in F.Supp., 1989 WestLaw 11721 [U.S.D.C. E.D. Pa. 1989]; **E.E. Cruz & Co., Inc. v. Alufab, Inc.**, 2006 WestLaw 1344095 [U.S.D.C. N.J. 2006]; **L.G. Elecs. V. 1st International Computer, Inc.**, 138 F.Supp.2d 574, 590 [U.S.D.C. N.J. 2001]; **DPR Const., Inc.**

Transfer of venue would serve to protect the litigants, witnesses and public from unnecessary expense, burden and inconvenience. The interests of justice mandate a transfer to Louisiana.

Defendants SELECT CAR COMPANY, INC., JAMES DONALD SANANGELO, CHARLES D. ANTHONY, and CLARENE ALLEN ANTHONY, respectfully request that their motion be granted and this action be dismissed or transferred under the alternative relief requested.

        Respectfully submitted,

**CENTO LAW, LLC**

By: /s/ G. John Cento
_____
    G. John Cento
    Cento Law, LLC
    The Emelie Building
    334 North Senate Avenue
    Indianapolis, Indiana   46204
    317-396-2545
    cento@centolaw.com

**BODENHEIMER, JONES & SZWAK, LLC**

By: /s/ David A. Szwak
_____
    David A. Szwak, LBR# 21157
    416 Travis St., Ste. 1404
    Mid South Towers
    Shreveport, Louisiana 71101
    [318] 424-1400
    Fax   221-6555
**ATTORNEY FOR DEFENDANTS**

---

**v. IKEA Property, Inc.**, Not Reported in F.Supp.2d, 2005 WestLaw 1667778 [U.S.D.C. E.D. Va. 2005].

## **CERTIFICATE OF SERVICE**

       I hereby certify that a copy of the above and foregoing has been served upon all counsel, as noted below, by placing a copy of same in the United States Mail, properly addressed and first class postage pre-paid, on this the 3rd day of March, 2014.
Gary Hoke
Michael Gibson
1320 City Center Dr., Suite 100
Carmel, Indiana   46032
[317] 571-3849
Fax   571-3737
Attorneys for Plaintiff

                                          /s/ G. John Cento

                                          **OF COUNSEL**